**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **MARK ANTHONY REYNOLDS,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:07-0271** |
| | ) | **(Criminal Action No. 5:04-0088)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Movant, acting *pro se* and incarcerated at USP Canaan, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody on June 8, 2007.[1] (Document Nos. 201 - 203.) By Standing Order, Movant's Motion was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 196.)

**FACTUAL AND PROCEDURAL BACKGROUND**

Movant and his co-defendant, Carl R. Mapel, were charged in a three-Count Indictment filed on April 21, 2004. (Criminal Action No. 5:04-0088, Document No. 31.) In Counts One and Two, Movant and Mr. Mapel were charged with wire fraud and aiding and abetting wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2. (Id., pp. 1 - 4.) In Count Three, Movant and Mr. Mapel were charged with obstruction of justice and aiding and abetting obstruction of justice in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2. (Id., p. 5.) On June 22, 2004, Movant, by counsel, J. Steven Hunter, filed a Motion to Suppress. (Id., Document No. 50.) In his Motion, counsel argued that the

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

following evidence should be suppressed: (1) "[A]ll of the evidence seized from his computer records, his private residence, his vehicle and all tape recorded phone conversations;" (2) "[A]ny statement or confession he may have made in this matter at or following his arrest;" and (3) "[A]ll evidence obtained as a result of any illegal wiretaps or other interception of phone conversations with this defendant or with Jack Maple, a codefendant in this matter." (Id.) By Order entered on July 15, 2004, the District Court denied Movant's Motion to Suppress. (Id., Document No. 67.) A four-Count Superseding Indictment was filed on July 16, 2004. (Id., Document No. 69.) In Counts One, Two, and Three, Movant was charged with wire fraud and aiding and abetting wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2. (Id., pp. 1 - 5.) In Count Four, Movant was charged with obstruction of justice and aiding and abetting obstruction of justice in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2. (Id., p. 6.) On August 3, 2004, following a four-day jury trial, Movant was found guilty of Counts Two and Four of the Superseding Indictment (Id., Document Nos. 82 and 83.) On August 9, 2004, Movant, by counsel, filed a Motion for New Trial and Judgment of Acquittal. (Id., Document No. 88.) In support of the Motion for New Trial and Judgment of Acquittal, Movant argued as follows: (1) "That the testimony and evidence presented by the United States of America was contradictory, and was insufficient to sustain a verdict of guilty;" (2) "That the jury verdict is based upon suspicion, speculation and conjecture, and was unduly influenced by improper 404(b) evidence as admitted by the Court, over the objection of counsel for the defense;" (3) "That the evidence presented by the United States of America is not sufficient competence, credibility, or relevancy to overcome the presumption of innocence afforded to the defendant, and that the jury chose to ignore the presumption of innocence;" (4) "That the jury verdict was strongly influenced by improper 404(b) evidence of other acts as admitted by the Court, over the objection of counsel";

2

(5) "That many of the recorded phone calls were not done consensually and should have been barred by the court as requested by the defendant;" and (6) "The defendant was denied his right of confrontation by the extensive recorded testimony of Carl Maple, Jr." (Id.) By Order entered on August 20, 2004, the District Court granted Movant's motion for judgment of acquittal as to the sixth sentencing factor found by the jury,[2] and denied the motion in all other respects. (Id., Document No. 92.) On January 6, 2005, the District Court sentenced Movant to a 120-month term of incarceration as to Count Two, and a 96-month term of incarceration as to Count Four, to run concurrently. (Id., Document Nos. 111 and 113.) The District Court further imposed a 3-year term of supervised release on Count Two, and a 3-year term of supervised release on Count Four, to run concurrently. (Id.) The District Court imposed a $200 special assessment and required Movant to pay $32,000 in restitution. (Id.)

On January 14, 2005, Movant, by counsel, James B. Lees, Jr., filed a Notice of Appeal. (Id.,

---

[2] The jury was charged with finding certain facts, such as: "Was there a significant disruption of a government function as a result of the conduct of the defendant, MARK ANTHONY REYNOLDS?" (Criminal Action No. 5:04-0088, Document No. 92, p. 1.) A finding of this fact was a ground for imposing a sentencing enhancement under the Guidelines. (Id.) In granting Movant's Motion as to the sixth finding of the jury verdict, the District Court explained that "a certain degree of disruption is inherent in an obstruction of justice charge, the enhancement does not 'ordinarily' apply 'unless the circumstances are unusual.'" (Id., pp. 1 - 2.) Specifically, the District Court found as follows (Id., p. 3.):

> At trial, no evidence was introduced establishing the degree of government function interruption that is normal or inherent in the offense of obstruction of justice. Indeed, in drafting this provision of the Guidelines, it should be remembered that the Sentencing Commission envisioned this provision being applied by a judgment, who would presumably have this knowledge already. Because the degree and extent of disruption must be unusual relative to a "normal" obstruction of justice charge, the trier of fact must have a basis from which to compare the present disruption to a baseline case. Constructing all facts in the light most favorable to the government, the jury had no basis for making this finding.

Document No. 116.) In his appeal, Movant argued that the evidence was insufficient to support his convictions, and the District Court's erred by imposing a five-level upward departure in sentencing. The Fourth Circuit Court of Appeals affirmed Movant's convictions, and vacated his sentence as to Count Two based upon the District Court's incorrect application of the United States Sentencing Guidelines, and remanded the matter for resentencing.[3] United States v. Reynolds, 178 Fed.Appx. 281, 2006 WL 1194314 (C.A.4 (W.Va.)). The District Court resentenced Movant on August 21, 2006, to a 96-month term of incarceration as to Counts Two and Four, to run concurrently. (Criminal Action No. 5:04-0088, Document No. 176.) The District Court further imposed a 3-year term of supervised release as to Counts Two and Four, to run concurrently. (Id.) On August 31, 2006, Movant filed his Notice of Appeal. (Id., Document No. 178.) Subsequently, Movant requested that his appeal be dismissed, and the Fourth Circuit granted his request by Order filed on March 9, 2007. (Id., Document No. 193.)

On April 27, 2007, Movant filed a Motion for Appointment of Counsel indicating his intention to file a Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255. (Civil Action No. 5:07-0271, Document No. 194.) By Order entered on May 3, 2007, the undersigned denied Movant's Motion for Appointment of Counsel and requested the Clerk to mail Movant a form Motion to Vacate, Set Aside or Correction Sentence. (Id., Document No. 197). On June 8, 2007, Movant filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and an Affidavit and Memorandum in Support. (Id.,

---

[3] Specifically, the Fourth Circuit held as follows: (1) The evidence was sufficient to support Movant's conviction of aiding and abetting wire fraud; (2) The evidence was sufficient to support Movant's conviction of obstruction of justice; and (3) The District Court failed to follow sentencing guidelines framework for grouping offense. *United States v. Reynolds*, 178 Fed.Appx. 281 (4th Cir. 2006).

4

Document Nos. 201 - 203.) As grounds for *habeas* relief, Movant alleges that counsel was ineffective based upon the following: (1) Trial counsel "denied Movant his constitutional right to testify in his own behalf" (Document No. 203, pp. 3-9.); (2) Trial counsel failed to adequately research the law concerning the suppression of illegally intercepted recordings and present an adequate defense on Movant's behalf (Id., pp. 9-19.); (3) Trial counsel failed to challenge federal jurisdiction concerning the charge of wire fraud (Id., pp. 19-20.); (4) Trial counsel failed to "investigate and present evidence relevant to the obstruction of justice offense" (Id., pp. 20-22.); (5) Appellate counsel failed to "investigate, argue and object to the sentencing enhancements that Movant received" (Id., pp. 23-27.); and (6) Trial counsel failed to "present the defense of public authority and entrapment by estoppel" (Id., pp. 27-33.) On June 25, 2007, Movant filed a Motion for Bail Pending 28 U.S.C. § 2255 asserting that he should be released on bail based on the following: (1) Movant poses no flight risk; (2) Movant poses no danger to the community; (3) Movant has already served half of his sentence; and (4) Movant is entitled to *habeas* relief based upon his claim of ineffective assistance of counsel. (Id., Document No. 204.) By Orders entered on May 22, 2008, the undersigned denied Motion's Motion for Bail and ordered the United States to file an Answer to Movant's claims as set forth in his Section 2255 Motion and Memorandum in Support. (Id., Document Nos. 212 and 213.)

On June 20, 2008, the Respondent filed its "Answer to Motion Under 28 U.S.C. § 2255." (Id., Document No. 217.) Respondent contends that there was no ineffective assistance of counsel. Specifically, Respondent states that (1) "Reynolds knew of his right to testify and voluntarily waived it" (Id., pp. 11 - 14.); (2) "Reynolds' illegal recording theories are both non-cognizable and meritless" (Id., pp. 14 - 18.); (3) "There was no manufactured jurisdiction because the government

had no part in the relevant wire transmission" (Id., p. 18.); (4) "Reynolds' attack on the sufficiency of the evidence of obstruction is non-cognizable and meritless" (Id., pp. 19 - 20.); (5) "Reynolds' claims concerning sentencing are not cognizable and are unavailing on the merits" (Id., pp. 20 - 24.); and (6) "Reynolds was not a government agent" (Id., p. 24 - 25.)

On July 17, 2008, Movant filed his "Response to Government's Answer." (Id., Document No. 222.) Specifically, Movant argues that counsel was ineffective based upon the following: (1) Counsel failed to investigate and present a defense concerning Movant's status as a cooperating informant (Id., pp. 4 - 5.); (2) Movant did not learn of his constitutional right to testify until "he began researching and preparing his § 2255 motion" (Id., pp. 5 - 6.); (3) "Counsel never informed Movant of his right to testify nor did he counsel against it" (Id., pp. 6 - 7.); (4) "Movant was prejudiced by being denied the right to testify" (Id., pp. 7 - 8.); (5) Counsel failed to adequately argue that the government used illegally intercepted recordings because there was no prior consent and the recordings were made for a criminal or tortious purpose (Id., pp. 8 - 13.); (6) Counsel failed to argue that the government manufactured jurisdiction (Id., pp. 13 - 14.); (7) Counsel failed to show that the obstruction of justice evidence was insufficient (Id., pp. 14 - 17.); (8) Counsel failed to argue and present evidence that Movant's sentence was improperly enhanced based upon abuse of trust and objection of justice (Id., pp. 17 - 19.); (9) Counsel failed to obtain credit for Movant's acceptance of responsibility (Id., p. 20.); and (10) Counsel failed to prepare a defense of "public authority and entrapment by estoppel" (Id., pp. 20 - 22.).

## DISCUSSION

The relevant portion of Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in

violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In order to be cognizable under Section 2255, claims based on other than constitutional or jurisdictional grounds must present exceptional circumstances that justify permitting a collateral attack. Stated another way, the alleged error must amount to "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Section 2255 is not a substitute for direct appeal. United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Accordingly, errors warranting a reversal on direct appeal will not necessarily support a collateral attack. Knight v. United States, 37 F.3d 769, 772 (1st Cir.1994). See United States v. Addonizio, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Failure to raise an issue presented in sentencing on direct appeal which is non-constitutional in nature amounts to a waiver of the right to contest the issue in Section 2255 proceedings. See United States v. Emanuel, 869 F.2d 795 (4th Cir. 1989).

With respect to issues which are constitutional in nature, absent a showing of good cause for and prejudice from failing to appeal as may be shown by a defendant in criminal proceedings, Section 2255 is no substitute, and the failure precludes Section 2255 review. Theodorou v. United States, 887 F.2d 1336, 1339-40 (7th Cir. 1989)("[A]bsent a showing of cause and prejudice, a defendant is barred from raising any constitutional challenge in a section 2255 proceeding which could have been raised on direct appeal."); United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993); See also United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994), cert. denied, 517 U.S. 1161, 116 S.Ct. 1555, 134 L.Ed.2d 657 (1996). The standard is conjunctive. As a general matter, therefore,

movants must show good cause for <u>and</u> prejudice from their failure to raise any constitutional issues advanced under Section 2255 on direct appeal. See <u>Theodorou</u>, <u>supra</u>, 887 F.2d at 1340. Constitutional claims of ineffective assistance of counsel are the exception. They are more properly raised in Section 2255 proceedings and not on direct appeal. <u>United States v. Richardson</u>, 195 F.3d 192 (4th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1096, 120 S. Ct. 837, 145 L.Ed.2d 704 (2000).

Indigent criminal defendants have the constitutional right to effective assistance of counsel through a direct appeal. <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In <u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. <u>Id.</u> The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. <u>Strickland</u>, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

<u>Strickland</u>, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical

decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

1.      **Movant's claim that counsel denied Movant his constitutional right to testify.**

        Movant alleges that counsel failed to advise Movant of his constitutional right to testify and refused to call Movant as a witness. (Civil Action No. 5:07-0271, Document No. 203, pp. 3 - 7.) Specifically, Movant states as follows:

> Movant, before and during trial asserted to counsel, numerous times, that it was his wish to testify and explain his side of the story to the jury. Although Movant asserted his wish to testify vigorously, counsel refused to call Movant to testify. Furthermore, counsel failed to advise Movant that it was Movant's constitutional right to testify

and that the ultimate decision belonged to Movant. Counsel neglected the vital professional responsibility of ensuring that any waiver of Movant's right to testify was knowingly and voluntary.

(Id., p. 4.) Therefore, Movant argues that counsel acted ineffectively by failing to "ensur[e] that Movant's right to testify was protected." (Id., p. 7.)

In response, Respondent contends that counsel did not conceal or override Movant's right to testify. (Id., Document No. 217, p. 11.) Respondent asserts that Movant "knew of his right to testify and voluntarily waived it." (Id.) Specifically, Respondent states that counsel informed Movant of his right to testify and counsel did not act unreasonably in advising defendant not to exercise his right to take the stand in his underlying criminal trial. (Id., pp. 12 - 14.) Respondent further claims that Movant was not prejudiced by his failure to testify. (Id.) In support, Respondent attaches the Declaration of trial counsel, Mr. J. Steven Hunter. (Id., Document No. 217-2.)

In his Reply, Movant contends that the "first time that he learned that he had a constitutional right to testify was when he began researching and preparing his § 2255 motion in 2007." (Id., Document No. 222, p 5.) Movant alleges that Mr. Hunter "was fully aware of the defense that movant wanted to present and that the defense hinged on the fact that movant had to testify." (Id.) Movant argues that "counsel fails to provide information as to what time and date that he advised movant against testifying and he does not provide any supporting document such as a waiver signed by movant." (Id., p. 6.) Movant contends that he was prejudiced because it was "the defense that he planned from the onset of the trial, [and] he was prepared to testify and submit to cross-examination by the government." (Id., p. 7.) Specifically, Movant states that "[he] and counsel discussed and agreed that the only way to win this case was for movant to testify and present the reason for his involvement in this case to the jury." (Id.)

10

To established a claim of ineffective assistance of counsel on the basis of the right to testify, Movant "must show both that his attorney violated his right to testify and that his testimony had a 'reasonable probability' of changing the outcome." <u>United States v. Rashaad</u>, 249 Fed.Appx. 972, 973 (4th Cir 2007). The Fourth Circuit has stated that "trial counsel, not the court, has the primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not." <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998). Accordingly, the undersigned first considers whether counsel advised Movant of his right to testify. In his Declaration, Mr. Hunter states that "[a]s Mr. Reynolds' counsel, I specifically informed him, before his trial began, of his constitutional right to testify in his defense and that the decision to testify ultimately rested with him. We discussed this right until I was convinced that he understood it." (<u>Id.</u>, p. 2.) Mr. Hunter declares that "[a]lthough I explained to Mr. Reynolds that the decision to testify rested with him, I counseled him against testifying because of his numerous prior convictions." (<u>Id.</u>) Mr. Hunter explained that "[i]n my professional judgment as a criminal defense attorney for 28 years, it would have been more harmful to Mr. Reynolds' case for the prosecution to be able to cross-examine him on his past convictions than it would have been helpful for his testimony to be admitted into evidence." (<u>Id.</u>, pp. 2 - 3.) Mr. Hunter states that Movant decided to waive his right to testify based upon Mr. Hunter's advice that "testifying would have been more harmful than helpful in his case." (<u>Id.</u>) A review of Movant's filings reveal that Movant presents contradictory statements concerning whether he was advised concerning his right to testify. Although Movant disagrees that counsel advised him of his right to testify, Movant states that he and counsel "discussed and agreed that the only way to win this case was for movant to testify."[4](<u>Id.</u>, Document

---

[4] To the extent Movant claims that counsel was ineffective in advising Movant not to testify, the undersigned finds this claim to be without merit. Defense counsel's advice concerning whether

No. 222, pp. 6 - 7.) Further, Movant's claim that counsel failed to advise him of his right to testify is unverified and self serving.[5] The undersigned therefore finds that counsel advised Movant concerning his right to testify and explained the tactical implications of doing so.

Next, Movant fails to show that his testimony had a 'reasonable probability' of changing the outcome of criminal trial. Movant states that he "wish[ed] to testify and explain his side of the story to the jury." (Civil Action No. 5:07-0271, Document No. 203, p. 4.) Movant merely speculates that he would have been acquitted had he testified in his defense. The record of Movant's criminal case reveals that the government admitted into evidence Movant's confession, his recorded statements, the recorded statements of his co-conspirator, the recording of the sting operation where Movant accepted bribe money, his appearance in pen register evidence, and the testimony from cooperating witnesses. In view of foregoing, there is no "reasonable probability" that the outcome of Movant's trial would have been different had he testified. Movant would have clearly been subjected to extensive cross-examination concerning his prior convictions, and possibly impeached had he taken the stand.[6]

---

a defendant should testify in his defense is a fundamental trial decision, which cannot be challenged as evidence of ineffective assistance of counsel. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002), *cert. denied*, 537 U.S. 897, 123 S.Ct. 196, 154 L.Ed.2d 166 (2002); *also see Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983), *cert. denied*, 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984)(stating that "[c]ounsel's advice not to testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.")

[5] In his Affidavit, Movant states as follows: "Counsel denied me the right to testify in my own behalf at trial. It was agreed, between counsel and myself, that it would be essential to my defense that I testify and explain to the jury all the circumstances that led to my arrest. Counsel denied me the right to present an adequate defense." (Civil Action No. 5:07-0271, Document No. 202, p. 1.)

[6] Although Movant argues that trial counsel told the jury in opening statements that Movant was a convicted felon, the District Court precluded Rule 404(b) evidence concerning Movant's prior convictions. (Criminal Action No. 5:04-0088, Document No. 146, pp. 52 - 60.)

2.     **Movant's claim that trial counsel failed to present an adequate defense supporting Motion to Suppress.**

Movant argues that trial counsel acted ineffectively by failing to present an adequate argument supporting the Motion to Suppress. Specifically, Movant argues as follows: "Counsel was ineffective for failing to investigate and present an adequate defense for the Suppression of Illegally Intercepted Recordings intercepted, in violation of Title III, by Stat Ambulance Service that violated Movant's Fourth, Fifth and Fourteenth Amendment Rights of the United States Constitution." (Civil Action No. 5:07-0271, Document No. 203, p. 9.) Movant contends that the government "introduced illegally intercepted recordings of conversations of Movant, Bill J. Buzzo and Carl Mapel, Jr., that were illegally intercepted by Stat Ambulance Service, a company owned and operated by Rose Sims and principle office located in Pineville, West Virginia." (<u>Id.</u>, pp. 9 - 10.) First, Movant argues that counsel was ineffective for failing to investigate and argue a Title III violation because (1) there was no prior consent for Stat Ambulance to intercept the calls; and (2) the recordings were not made in the ordinary course of business for Stat Ambulance. (<u>Id.</u>, pp. 10 - 14.) Movant states that "during trial, testimony revealed that neither Bill Buzzo, Mapel or Movant provided prior consent to Stat Ambulance to intercept the recordings introduced in the government's case in chief." (<u>Id.</u>, p. 10.) Movant contends that "Buzzo's testimony showed that when he requested the calls to be recorded it was for the purpose of establishing a 'receipt' documenting his bribery payments in the event that the originally agreed to price was raised." (<u>Id.</u>, p. 12.) Movant therefore claims that the recordings should not have been admitted because they "were intercepted for the purpose of committing a criminal or tortious act." (<u>Id.</u>, pp. 12 - 13.) Movant further contends that the recordings were not intercepted in the ordinary course of business because the calls were personal and unrelated to the business of Stat Ambulance. (<u>Id.</u>, pp. 13 - 14.) Specifically, Movant states that "Stat Ambulance

Service did not monitor and intercept Buzzo's calls for a legitimate business purpose." (<u>Id.</u>, p. 14.) Finally, Movant argues that the recordings violated his Fourth Amendment right of privacy, his Fifth Amendment right against self incrimination, and his Fourteenth Amendment right to due process. (<u>Id.</u>, pp. 14 - 17.) Movant, therefore, claims that "if counsel would have effectively represented him and filed an adequate Suppression Motion, the government would have been prohibited from using illegally intercepted recording in its case in chief and the outcome of the trial would have been different." (<u>Id.</u>, p. 19.)

In his response, Respondent argues that Movant's "illegal recording theories are both non-cognizable and meritless." (<u>Id.</u>, Document No. 217, pp. 14 - 18.) First, Respondent states that Movant's Fourth Amendment claim is "not cognizable in light of the opportunity for a full and fair consideration of his theory in the trial court." (<u>Id.</u>, p. 14.) Second, Respondent contends that Movant's statutory claim alleging the violation of the Title III of the Omnibus Crime Control and Safe Streets Act of 1968 is not cognizable. (<u>Id.</u>, pp. 14 - 15.) Third, Respondent claims that even considering the merits, Movant's statutory claims fail because (1) the recordings were made with consent, and (2) the recordings were not made to further a crime or tort. (<u>Id.</u>, pp. 15 - 18.) Respondent claims that Movant "disingenuously points to testimony of Buzzo as to when Buzzo began to *care* that the calls to Stat Ambulance were recorded in order to mislead the Court on whether Buzzo *knew* they were recorded." (<u>Id.</u>, p. 15.) Specifically, Respondent states that "Buzzo expressly and specifically testified that he was aware that the phone system was in place and he was aware that his calls were being recorded at the time he made them." (<u>Id.</u>, pp. 15 - 16.) Respondent contends that the recordings were not made to further a crime or tort, but "were a fortuitous and unintentional result of a straight forward and automatic business practice of recording all calls." (<u>Id.</u>,

p. 17.) Respondent states that "to the extent that Buzzo later consciously decided to use recorded lines, and cared about doing so, he testified that it was because he had become afraid, rather than to document or 'receipt' the purported bribery." (Id.)

In his Reply, Movant asserts that "[t]he 'fundamental defect' of counsel's failure to investigate and prepare an adequate brief in Movant's behalf, caused a complete 'miscarriage' of justice with regard to the argument and violation of Title III in this matter and are claims for ineffective assistance cognizable on federal habeas review." (Id., Document No. 222, pp. 8 - 9.) Movant continues to argue that Mr. Buzzo's testimony reveals that he was unaware that the calls were being recorded. Movant references the following testimony in support of his argument:

> I asked my grandson about the calls, and I asked if they recorded all calls, and he said yes. And I told him I just got a call from Mark, and I said can you pull that up? And would you pull it up and listen to it. (See: JA-127 Buzzo-Direct)

> * * *

>  That after the meeting in Morgantown - - can I answer this way - - at the Holiday Inn and the price went to $200,000.00. I went back home and I sat down and I talked with my family about this. And 'I asked Jason on your ambulance phones, I said, do you have a system that records all your calls?' And he said yes. I said could you pull up a couple of those calls and listen to them, and listen to the ones that Mr. - - that Mark talked to me about. And he said yes. I said would you pull it up and listen to it and tell me what you think about it. And from that time is when I asked him to keep record of them, and I gave him the dates and the times. (See: JA-37 Buzzo-Cross.)

(Id., pp. 9 - 10.) Movant, therefore, contends that "Stat Ambulance Service never had prior consent to record calls" and the testimony shows that Mr. Buzzo was unaware that the calls were being recorded. (Id., p. 10.) Movant argues that the "violations of Title III are very clear and counsel's failure to investigate and present a defense or an adequate suppression motion constitutes deficient performance of counsel that resulted in a complete miscarriage of justice that permitted the government to use illegally intercepted recordings in its case-in-chief to prosecute and convict

movant." (Id.) Movant further contends that the calls were recorded for a criminal or tortious purpose because Mr. Buzzo wanted the recordings as record or receipt for the alleged bribery payments. (Id., pp. 11 - 12.)

Based upon a review of the record, the undersigned first finds that Mr. Hunter's representation regarding the alleged illegal recordings did not fall below an objective standard of reasonableness. In the Motion to Suppress, Mr. Hunter moved to suppress "all tape recorded phone conversations which were recorded without a legal wire tap Order or which there is no written evidence of consent to record both as to this defendant and as to Jack Maple, William Buzzo and also to all recorded conversations as disclosed in the government's discovery" and (2) "all evidence obtained as a result of any illegal wiretaps or other interception of phone conversations with this defendant or with Jack Maple a codefendant in this matter." (Criminal Action No. 5:04-0088, Document No. 50.) A review of the transcripts reveal that Mr. Hunter argued the recordings should be suppressed based upon constitutional and statutory grounds. The following arguments were presented to the District Court:

MR. HUNTER: . . . To date I have never seen a signed consent document nor has any witness other than an agent of the FBI that testified at the preliminary haring that there was, in fact, any consensual recording of these calls, and we would move to suppress all of the calls except those that were recorded pursuant to a valid order and that order was entered very late and it only deals with a very limited number of calls, Your Honor. So that motion is still pending before the court.

THE COURT: All right. Are there any calls outside the warrant part of the court ordered intercept - - the court authorized intercept.

MR. PILGER: Your Honor, the court was not involved in the intercepts, and let me explain. The government's proffer here would be that these recordings were made in the ordinary course of business of an ambulance service. The victim in this  case, one of the

16

victims, Bill J. Buzzo, his family runs an ambulance service. And for liability purposes, all the calls that come in or go out from lines to that service are recorded. Everyone there - - my understanding is everyone there and certainly all the participants on the ambulance service end of the calls at issue knew about the recording, so there is - - there is one party consent to each of these calls.

Towards the end of the investigation, there are other recordings, which the FBI supervised - - body wire recordings and a videotaped meeting between defendant Maple and a witness. And, again the government - -

THE COURT:      All right. Did all those involve Mr. Buzzo?

MR. PILGER:     I believe all the calls at issue involve Mr. Buzzo, Mr. Jason Smith or perhaps one Kathy Smith.

THE COURT:      And they were all wired and, of course, consented to it and so you had one party to the conversation consenting to it being recorded, correct?

MR. PILGER:     Yes, Your Honor. To be clear, Mr. Buzzo I do not believe wore a wire at any time. That would only be Mr. Jason Smith, and he consented. But, yes, those three individuals all knew about the recording process at the ambulance service. So any call they participated in, they, like the other people at the ambulance service, knew that the recordings were being made.

THE COURT:      All right. Mr. Hunter, you satisfied with that?

MR. HUNTER:     No, I'm not, Your Honor.

One, we have never heard from them that they knew they were being made.

Second, my understanding is that a phone call that is being recorded, there is to be an audible warning made within the phone call. None of the disks I have show any type of beep or any other required notification of the recording of these phone calls. Many of the phone calls, or apparently all the phone calls were made from the ambulance office or received at the ambulance office. But, again, there is no notification to

the other party that their conversations were being recorded. And I think that violations the rights of these individuals.

The second matter in that regard was that it was indicated at the preliminary hearing that these recordings were kept. And I don't know when they first started, the first one I have is a conversation that was taped on 7-25-03, and I don't know when they started recording the conversations, but it's my understanding that Mr. Maple's involvement with Mr. Buzzo was long before that and that the Buzzo family became involved with a former IRS agent and that IRS agent advised them to record these phone calls.

And if that's the case, I think there is some potential government involvement in the whole procedure. I don't know what the communications were. At the preliminary hearing the agent that testified indicated that he knew the former IRS agent and respected his opinions about things. But, in any event, that was the representation made at the preliminary hearing in this matter. And again, I think the recordings are improper, all the ones that were made prior to the court's order and all - - we have no problem with the wire conversations, we can't undo that, but I still have serious questions about these phone calls that were recorded at this ambulance service.

THE COURT:          Well, sounds to me like we're going to have to have a suppression hearing, evidentiary hearing and deal with the specific calls, Mr. Pilger. Do you see anyway around that?

MR. PILGER:         I really do, Your Honor. If I may be heard further.

THE COURT:          Sure.

MR. PILGER:         There is a myriad of cases on this point. There is simply no Title 3 challenge that is viable here, much less a constitutional challenge. And in our pleading that we submitted, I cited to the statutes within Title 3, specifically 25 11 C and D, which on their face make this clear.

If - - I believe the court can and should decide this on the paper. There is no law - - defense counsel can cite to no case and no statute which would make and part of the recordings we have turned over suppressible, either under the constitution or under the statute.

18

> And just to add two things as to audible beeps, I believe
> counsel may be conflating state and federal law. Some states
> do have such a requirement, but it would have no bearing on
> this federal proceeding.

(Id., pp. 4 - 7.) Although Mr. Hunter was ultimately unsuccessful, it is clear that he argued that the

recordings were illegal and violated Title III.[7] Thus, Mr. Hunter adequately challenged the validity

of the recordings. Further, the decision of whether and how to object to evidence is a question of

strategy for trial counsel. An attorney's strategic decision is presumed reasonable and protected from

second guessing under Strickland.

Furthermore, there is no evidence that Movant was prejudiced by counsel's failure to

thoroughly research or argue for the suppression of the recordings based upon constitutional and

statutory grounds. First, there is no Fourth Amendment violation where one party to the conversation

has consented to the recording of the conversation.[8] See United States v. White, 401 U.S. 745, 751,

91 S.Ct. 1122, 28 L.Ed.2d 453 (1971)(plurality opinion)(finding that the government does not

---

[7] Mr. Hunter clearly challenged the admissibility of the tape recordings during the suppression hearing arguing that the recordings were inadmissible. Mr. Hunter continued to unsuccessfully challenge the admissibility of the tapes during the jury trial. The undersigned notes that Mr. Hunter requested a mistrial arguing lack of consent regarding the recordings. (Criminal Action No. 5:04-0088, Document No. 146, pp. 5 - 6 and Document No. 147, p. 130.)

[8] Additionally, it is clear that Movant had an opportunity for full and fair litigation of his claims. In Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court held as follows:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth
> Amendment claim, a state prisoner may not be granted federal habeas corpus relief
> on the ground that evidence obtained in an unconstitutional search or seizure was
> introduced at his trial.

Accordingly, the undersigned finds that Stone v. Powell prohibits this court from revisiting the above claim.

violate the Fourth Amendment by employing an informant to record his communications with the target because a wrongdoer does not have a constitutional justifiable expectation that his confidant will not record their conversation and turn it over to the government); <u>States v. McKneely</u>, 69 F.3d 1067, 1073 (10th Cir. 1995)(stating that "[w]hen the government records a defendant's conversation with another party, pursuant to that party's consent, neither the Fourth Amendment nor 18 U.S.C. § 2511(2)(c) is violation"); <u>United States v. Agbelusi</u>, 861 F.2d 266 (4th Cir. 1988) <u>citing</u> <u>United States v. Dowdy</u>, 479 F.2d 213 (4th Cir.), <u>cert. denied</u>, 414 U.S. 823 (1973)(stating that defendant's "Fourth Amendment rights were not violated when the government recorded certain telephone conversations he had with a confidential informant and a government agent"); <u>United States v. Miller</u>, 720 F.2d 227, 228 (1st Cir. 1983)(finding that recording of a telephone conversation with consent of one party to the call does not violate the Fourth Amendment); <u>Roller v. McKellar</u>, 711 F.Supp. 272, 281 (D.S.C. 1989)(citations omitted)(finding that "neither Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 - 2520, nor the Fourth Amendment protects parties to an intercepted conversation who speak with no legitimate expectation of privacy"). Next, Title 18 U.S.C. § 2511  provides that "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." A party to a conversation consents when he is aware that the conversation will be recorded and he continues to use that means of communication. <u>See</u> <u>United States v. Hammond</u>, 286 F.3d 189, 192 (4th Cir. 2002); <u>United States v. Workman</u>, 80 F.3d 688, 693 (2nd Cir. 1996).

Contrary to Movant's assertions, a thorough review of the record reveals the recordings made

on the Stat Ambulance phones were the result of prior consent. Jason Smyth, director of Stat

Ambulance, testified that "every call that comes in is automatically recorded as soon as the phone

is picked-up." (Criminal Action No. 5:04-0088, Document No. 144, p. 78.) Mr. Smyth explained

that Stat Ambulance's phones have stickers notifying users that all calls are recorded. (Id., pp. 78 -

79.) Mr. Smyth further testified that Mr. Buzzo knew the calls he was making from Stat Ambulance

were being recorded. (Id., Document No. 145, p. 114.) Mr. Buzzo also testified that he knew when

he talked on the phone at Stat Ambulance that his calls were automatically recorded. (Id., Document

No. 146, pp. 82 - 83.) Although Mr. Buzzo stated that he inquired of Mr. Smyth as to whether the

calls were recorded and could be "pulled up," Mr. Buzzo verified that he knew the calls were being

recorded before inquiring of Mr. Smyth.[9] (Id., Document No. 146, pp. 127 - 28, and Document No.

147, pp. 38 - 39.) Mr. Buzzo explained that he asked Mr. Smyth if he could "pull up" a call from

Movant because Mr. Buzzo wanted Mr. Smyth the hear the conversation. (Id., Document No. 146,

pp. 127 - 128, and Document 147, pp. 37 - 38.) Mr. Buzzo testified that it came a point where he

wanted to talk to Movant and Mr. Mapel on recorded phones because Movant was speaking to him

in a threatening manner.[10] (Id., Document No. 146, p. 128.) Based on the forgoing, the undersigned

---

[9] Mr. Hunter specifically inquired whether Mr. Buzzo knew the calls were being recorded prior to inquiring of Mr. Smyth. (Criminal Action No. 5:04-0088, Document No. 147, p. 39.) Specifically, Mr. Buzzo testified as follows:

> Q.    At that time when you first got those calls, did you know they were being recorded, or was it just as you just stated: "I asked Jason if they had been recorded"?

> A.    I knew they were being recorded, because the phone has a system that every call that comes through is recorded.

[10] Mr. Buzzo testified as follows (Criminal Action No. 5:04-0088, Document No. 146, p. 128.):

finds that the record contains sufficient facts to support a finding of prior consent.[11] Accordingly, Movant was not prejudiced by counsel's alleged failure to adequately challenge the recordings on constitutional and statutory grounds.

Finally, the undersigned finds there is no evidence supporting Movant's claim that the recordings were made in the furtherance of a crime or tort. Citing Title 18 U.S.C. § 2511(2)(d) and United States v. Vest, 813 F.2d 477 (1st Cir. 1987), Movant argues that the calls should have been excluded because Mr. Buzzo recorded the calls as a "receipt" for the bribes. Title 18 U.S.C. § 2511(2)(d) provides as follows:

---

Q.   Mr. Buzzo, what I was trying to ask you about was that there came a point where to decided you wanted to talk to these guys on the recorded phones; right?

A.   Yes, sir. And that was the point where it took place.

Q.   Okay.

A.   It was then on out that any time I talked with them I would talk on that phone to Mark.

Q.   Without saying anything about what anybody told you, except the defendant or Mapel, why did you decide to do that?

A.   Because of the way Mark was talking to me. It was threatening, and it made me think, that was  - - at this time I was wondering, the way they were talking to me about the money, that the money wasn't going to help me; that it was - - they were using this money for their own good, because Mr. Mapels (sic) was telling me how Mark needed this money.

[11] The undersigned further notes that the recordings did not result in a violation of Movant's Fifth Amendment right against self incrimination. The Fifth Amendment privilege against self incrimination guarantees every criminal defendant "the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty for such silence." *Estelle v. Smith*, 451 U.S. 454, 468, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)(*quoting*, *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)). There is no allegation or evidence that Movant did not "speak in the unfettered exercise of his own will."

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

In <u>Vest</u>, the co-conspirator testified that the reason for making the recording was to create a "receipt" of the bribe. <u>See</u> <u>Vest</u>, 813 F.2d at 479. Unlike the co-conspirator in <u>Vest</u>, there is no evidence that Mr. Buzzo recorded the conversations for a criminal or tortious purpose. A review of the record reveals that Mr. Buzzo knew, but was indifferent, as to the fact that the calls were being recorded. Mr. Buzzo testified that he subsequently became concerned over the threatening nature of the calls and wanted all calls to be recorded. Mr. Buzzo never stated that he recorded the calls a "receipt" for the bribes. At most, it appears that Mr. Buzzo may have been gathering evidence of a violation of the law, which is not criminal or tortious. <u>See</u> <u>United States v. Zarnes</u>, 33 F.3d 1454, 1469 (7th Cir. 1994)(finding that defendant "made the tape for the lawful purpose 'of turning [it] over to the Government if she were caught in the hope of obtaining a better deal for herself'"). Movant, therefore, was not prejudice by Mr. Hunter's failure to present the above argument because there is no evidence that Mr. Buzzo recorded the call as "receipt" for the bribes. Accordingly, the undersigned finds that Movant's claim of ineffective assistant of counsel based upon counsel's failure to get the tape recordings suppressed to be without merit.

3.      **Movant's claim that trial counsel failed to challenge federal jurisdiction.**

Movant argues that Mr. Hunter was "ineffective for failing to investigate and present evidence that showed that the February 18, 2004 call, that formed the basis for the wire fraud count, was the result of manufacture jurisdiction." (Civil Action No. 5:07-0271, Document 203, p. 19.) Movant argues that Mr. Buzzo "placed a phone call to Arizona, at the urging of the F.B.I., to speak

to Carl R. Mapel, Jr. about the alleged bribery scheme." (Id.) Movant contends that "the most important factor is whether the receipt of an interstate call, in no way initiated by Movant or Mapel, was sufficient to form the basis to transform this sordid, federally provoked incident of local corruption into a crime of wire fraud against the United States." (Id., p. 20.)

In his response, Respondent asserts that "[t]here was no manufactured jurisdiction because the government had no part in the relevant wire transmission." (Civil Action No. 5:07-0271, Document No. 217, p. 18.) Respondent claims that "[a]t the time of the February 18, 2004, phone call between Buzzo in West Virginia and Mapel in Arizona, the government had not yet contacted Buzzo. Instead, the first recording directed by the FBI was on March 2, 2004." (Id.) Respondent, therefore, argues that Movant's theory is frivolous. (Id.)

In his Reply, Movant contends the government was involved in the February 18, 2004, call that established the basis for the wire fraud conviction. (Civil Action No. 5:07-0271, Document No. 222, p. 13.) Movant argues that "the government's statements are contradicted by testimony and documentation in this case." (Id.) In support, Movant states that "Special Agent Dean Lauffer testified on July 16, 2004 before a federal grand jury in Charleston, West Virginia, that the call originating from Pineville, West Virginia, was to Mapel's cell phone who was alleged to be in Arizona." (Id.) Movant states that "Mapel received the call on February 18, 2004, while purporting to be in Arizona." (Id., p. 14.) Movant continues to argue that "the government used a call placed to a cell phone, while Mapel was in West Virginia, to form the basis for federal jurisdiction." (Id.)

The basis for federal prosecution cannot be established by manufactured jurisdiction. United States v. Coates, 949 F.2d 104, 106 (4th Cir. 1991)(finding that sole jurisdictional link was contrived by the government for the purpose of establishing federal jurisdiction where the agent made a short

24

trip across state lines in order to make an interstate telephone call). The Fourth Circuit has recognized that manufactured jurisdiction occurs when federal jurisdiction is "patently contrived by the government." Id. The government cannot provide the sole "effect upon commerce" required to create federal jurisdiction. United States v. Brantley, 777 F.2d 159 (4th Cir. 1985), cert. denied, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986)(finding that manufactured jurisdiction occurred in a gambling case where the only interstate activity was the FBI's act of moving gambling machines across state lines in order to establish the gambling front). In determining whether manufactured jurisdiction has occurred, the Court should focus on "the government's reasons for taking the action upon which federal jurisdiction is asserted." Coates, 949 F.2d at 106; also see United States v. Cooper, 46 F.3d 1127, * 1 (4th Cir. 1995)(unpublished opinion)(refusing to find manufactured jurisdiction where defendant could "not show that the only reason for the meeting in Virginia was to establish jurisdiction").

Without determining whether trial counsel's performance was deficient, the undersigned finds that Movant has not demonstrated that he was prejudiced by Mr. Hunter's failure to investigate his claim of manufactured jurisdiction. Movant's conclusory claim that a thorough investigation by Mr. Hunter would have revealed that the February 18, 2004, call was made at the direction of the FBI for the sole purpose of establishing jurisdiction, is without merit. A thorough review of the record reveals the opposite. FBI Agent Dean Lauffer testified that the government was not involved in the recording of calls before March, 2004. (Criminal Action No. 5:04-0088, Document No. 147, pp. 81 - 82.) Agent Lauffer further explained that the telephone records exhibited that Mr. Buzzo initiated a call from Pineville, West Virginia, to Mr. Mapel on February 18, 2004, by dialing a Tucson, Arizona telephone number. (Id., pp. 90 - 91.) Specifically, Agent Lauffer testified as follows:

> Q.     Turning your attention to February 18, 2004, and Government Exhibit 13 - -
>
> A.     Yes.
>
> Q.     - - from your review of telephone records, do you know where this call originated?
>
> A.     Pineville, West Virginia.
>
> Q.     And do you know where it went? Where its destination was?
>
> A.     Tucson, Arizona.
>
> Q.     How do you know it was Tucson, Arizona?
>
> A.     On the DVD RAM the dial number is 520, which is a Tucson area code. The remainder is 818-3281, which is a number that was being used by Jack Mapel in the Tucson area.
>
> Q.     That's a Mapel-to-Buzzo call or Buzzo-to-Mapel call?
>
> A.     Buzzo-to-Mapel call.

(Id.) The record is void of any evidence that federal jurisdiction was "patently contrived by the government."[12] Accordingly, Movant's ineffective assistance of counsel claim on this ground should be dismissed.

**4.     Movant's claim that trial counsel failed to investigate and present evidence relevant to the obstruction of justice offense.**

Movant argues that "[c]ounsel was ineffective for failing to investigate and present evidence relevant to the obstruction of justice offense." (Civil Action No. 5:07-0271, Document No. 203, pp. 20 - 22.) Movant claims that Mr. Mapel "never mis-represented his status of being 'inactive' to the

---

[12]  During closing arguments, Mr. Hunter urged the jury to find Movant not guilty as to Count Two because "[n]obody had ever said Mark Reynolds was in Arizona." (Criminal Action No. 5:04-0088, Document No. 148, p. 48.)

District Court." (Id.) In support, Movant asserts that " the Pro Hac Vice form, as filed by Mapel and

Charles B. Mullins on December 5, 2003, does not contain any question regarding the 'status' of

visiting attorneys." (Id., p. 21.) Since Mr. Mapel was not disbarred, Movant states that "Mr. Mapel

was prohibited from practicing law in the State of Pennsylvania but was not prohibited in federal

court." (Id.) Next, Movant claims that there was no obstruction of justice because Charles B. Mullins

appeared as local counsel for Mr. Buzzo. (Id., p. 22.) Finally, Movant argues that District Judge

Robert Chambers authorized Mr. Mapel to practice law in the United States District Court for the

Southern District of West Virginia by signing the Order allowing Mr. Mapel to appear Pro Hac Vice.

(Id.) Movant states that District Judge Chambers was advised by Mr. Mapel of his inactive status.

(Id.)

In response, Respondent contends that "Reynold's attack on the sufficiency of the evidence

of obstruction is non-cognizable and meritless." (Id., Document No. 217, p. 19 - 20.) Respondent

states that Movant "points to no new evidence, and his claim reduces to a sufficiency of the evidence

argument. Sufficiency of the evidence is no cognizable under Section 2255." (Id., p. 19.) Respondent

argues that Movant's "claim turns on this theory that Mapel was sufficiently credentialed to practice

before Judge Cambers in the Buzzo case," but "this claim is frivolous in that Reynolds confessed

that he knew this was untrue." (Id.) Finally, Respondent claims that "Buzzo testified that Reynolds'

actions caused him to believe that his sentence would be determined by a bribe, rather than on the

merits, causing Buzzo to forgo investigation and preparation of his defense, especially as to his

medical condition." (Id.)

In his Reply, Movant continues to assert that "Mapel advised the court, in the December 5,

2003 hearing, that he had been placed on inactive status by the Pennsylvania Supreme Court for

failing to attend continuing education classes." (Id., Document No. 222, p. 15.) Movant reasserts that "on December 10, 2003, an order was entered granting Mapel's Pro Hac Vice application, stating that Mr Mapel is qualified to practice before this Court." (Id.) Based on the foregoing, Movant contends that there is insufficient evidence that he obstructed justice. (Id., p. 17.)

The undersigned finds that Mr. Hunter was not ineffective for failing to investigate and present evidence relevant to the obstruction of justice offense. Movant argues that he was not guilty of obstruction of justice because Judge Chambers knew of Mr. Mapel's inactive status and allowed Mr. Mapel to proceed as counsel. Movant's claim is clearly refuted by the record. First, the record reveals that Movant confessed that he knew Mr. Mapel was not licensed to practice law and that "Jack Mapel would be in trouble should his true bar status be known." (Criminal Action No. 5:04-0088, Document No. 147, p. 101.) Second, Judge Chambers testified that Mr. Mapel misrepresented his status by completing the visiting attorney application stating that he was a member of the Pennsylvania State Bar and the United States District Court for the Middle District. (Id., Document No. 145, p. 54.) Judge Chambers explained that a person must "have a valid, active membership in a bar." (Id.) Judge Chambers testified that he would not have permitted Mr. Mapel to act as counsel had he known of Mr. Mapel's inactive status.[13] (Id., p. 48.) Judge Chambers explained that Mr. Mapel's misrepresentation about his status resulted in Mr. Buzzo's plea being vacated and required new proceedings to start. (Id., pp. 51 - 52.) The undersigned therefore finds that Mr. Hunter did not

_____

[13] Judge Chambers testified as follows (Criminal Action No. 5:04-0088, Document No. 145, p. 48):

> Q.    Judge Chambers, if you had known that Mr. Mapel had not proper licence to practice law, would you have permitted that to occur?

> A.    Of course not. Absolute not.

act unreasonably in failing to argue that Mr. Mapel's inactive status did not constitute obstruction

of justice. Moreover, Judge Chambers testified that the bribery issue was "independently another

reason" that Mr. Buzzo's plea would have been vacated.[14] (Id., p. 51.) Mr. Buzzo testified that he

did not properly prepare a defense because Mr. Mapel and Movant represented that his sentence

would be determine by a bribe. (Id., Document No. 147, pp. 8 - 10.); also see United States. v.

Littleton, 76 F.3d 614, 619 (4th Cir. 1996)(Obstruction of justice occurs when there is a pending

judicial proceeding that the defendant has knowledge of, and the "defendant acted with the intent

to influence, obstruct, or impeded that proceeding in its due administrative of justice."); United

States v. Neiswender, 590 F.2d 1269 (4th Cir. 1979)(finding that the intent requirement of 18 U.S.C.

§ 1503 can be satisfied by participation in a scheme to defraud that interferes with judicial

proceedings). The jury clearly had significant evidence to support its finding that Movant obstructed

justice. Accordingly, Movant has failed to show that there is a reasonable probability that, but for

---

[14]   The following testimony was presented (Criminal Action No. 5:04-0088, Document no. 145, pp. 51 - 52.):

> Q.   And, Judge, I want to break out the two pieces here. You were aware, you had been told, that Jack Mapel was not properly licensed. Was that alone enough of a reason that you would have done what you just described?

> A.     Absolutely.

> Q.   Independently, you were told Jack Mapel was claiming that he was paying money. Is that independently another reason that you would have entered that order?

> A.   Well, I would have had probably further proceedings, but certainly if it appeared to me that Mr. Buzzo's attorney, even if he was properly licensed, he told Mr. Buzzo that he could - - if Mr. Buzzo would pay him some additional money that money would be used to get someone to influence me, then absolutely I would have set aside his plea and we would have started over, and probably taken other action as well.

Mr. Hunter's alleged errors, the results of the proceeding would have been different.

5.      **Movant's claim that appellate counsel failed to challenge the sentencing enhancements.**

Movant claims that appellate "[c]ounsel was ineffective for failing to investigate, argue and object to the sentencing enhancements that Movant received." (Civil Action No. 5:07-0271, Document No. 203, pp. 23 - 27.) First, Movant contends that his sentence was improperly enhanced for Abuse of Trust because "Movant did not receive or possess any special skill or training to assist Mapel in the case and Movant never maintained any relationship with the victim Bill Buzzo." (Id., p. 23.) Movant claims that "trial testimony revealed that Movant did not have a relationship with the victim Bill Buzzo." (Id., p. 24.) Second, Movant argues that appellate counsel was "ineffective for failing to investigate, argue and object to the Movant's sentence being enhanced for Substantial Interference with the Administration of Justice." (Id., p. 25.) Movant argues that the enhancement "can only apply where a significant further obstruction occurred during the investigation, prosecution or sentencing of the original charge of obstruction itself." (Id., p. 26.) Movant claims that "he was convicted of obstruction of justice and enhanced for the same conduct that formed the basis of the original offense." (Id.) Finally, Movant argues that appellate counsel failed to "argue at sentencing that Movant receive a two level reduction for Acceptance of Responsibility." (Id., pp. 26 - 27.) Movant states that his trial testimony reveals that "Movant gave a statement after his arrest that indicated his guilt and Movant's acknowledgment thereof." (Id., p. 27.) Movant contends that he "cannot be denied acceptance of responsibility for choosing to go to trial to assert and preserve issues that do not relate to factual guilt or to make a constitutional challenge to a statute." (Id.) Movant asserts that he "proceeded to trial to testify and preserve the issue of the illegal recordings and other factors that are included in this Motion." (Id.)

In response, Respondent argues that Movant's "claims concerning sentencing are not cognizable and are unavailing on the merit." (Id., Document No. 217, p. 20 - 26.) Respondent states that it is unnecessary to consider the merits because "the mere misinterpretation or application of a guideline provision generally does not amount to a miscarriage of justice that warrants relief under § 2255." (Id., p. 20.) Even considering the merits, Respondent states that Movant's claims are without merit. (Id., pp. 21 - 26.) First, Respondent states that the Court properly applied Guideline Section 3B1.3 because the evidence revealed that "Reynolds was in a relationship of private trust with the victim, Buzzo." (Id., p. 21.) Respondent argues that similar to lawyers, paralegals also hold a position of trust. (Id.) Respondent claims that the "evidence showed Reynolds placed himself in a position of trust with Buzzo, and used that position to further the offense, by representing that he was a paralegal on a legal team acting as advocates for Buzzo in a federal criminal case." (Id.) Respondent contends that "Reynolds used the misapprehension of Buzzo that Mapel was a qualified lawyer and Reynolds was a paralegal as a tool to gain even more influence over Buzzo, and to enhance his own credibility and position of trust." (Id.) Next, Respondent argues that the Court properly applied Guideline Section 2J1.2(b)(2) because the enhancement was applied to his wire fraud conviction (Count Two).[15] (Id., p. 22.) Respondent states that "Reynolds incorrectly assumes that this enhancement was applied in calculating his offense level for his obstruction conviction (Count Four)." (Id.) Respondent states that the Court's application of Section 2J1.2(b)(2) was proper on the facts "for reasons explained in detail by Judge Chambers's testimony at trial, (Tr. II, at 49 -

---

[15]   The "Memorandum of Resentencing Hearing and Report of Statement of Reasons" exhibits that the District Court applied a three-level upward adjustment to Movant's obstruction of justice offense (Count 4) because the offense involved a substantial interference with the administration of justice pursuant to U.S.S.G. § 2J1.2(b)(2). (Criminal Action No. 5:04-0077, Document No. 177, p. 2.)

51, 179 - 80), and by Buzzo's testimony about the effect of the scheme on his efforts in his own defense, (Tr. IV, at 8 - 10)." (Id., pp. 22 - 23.) Finally, Respondent argues that the Court properly applied Guidelines Section 3E1.1(a) because "a confession alone does not require a Section 3E1.1(a) adjustment, nor can it warrant the adjustment where the defendant puts the government to its proof on all elements." (Id., p. 23.) Respondent states that "[a]lthough Reynolds did confess to his involvement in the scheme to the FBI, he then went to trial to contest every element of the scheme, not merely to preserve legal issues." (Id.) Therefore, Respondent contends that appellate counsel was not ineffective in representing Movant at sentencing.

In his Reply, Movant continues to claim that appellate counsel was ineffective in failing to challenge Guidelines Section 3B1.3 because he did not have a relationship of trust with the victim. (Id., Document No. 222, p. 18.) Movant asserts that Mr. Buzzo's statements that he was afraid of Movant "eliminates the relationship of trust issue that is required from the enhancement to be used." (Id.) Movant states that he was "nothing more than Mapel's secretary." (Id.) Next, Movant contends that the Section 2J1.2(b)(2) enhancement was applied to his obstruction of justice conviction, not the wire fraud conviction. (Id., p. 19.) Finally, Movant argues that "he should not be denied acceptance of responsibility for exercising his constitutional right by going to trial." (Id., p. 20.)

Based on a thorough review of the record, the undersigned finds that appellate counsel was not ineffective in representing Movant at sentencing.[16] First, the Court finds that appellate counsel did not act unreasonably in failing to object to the application of Guidelines Section 3B1.3. Section 3B1.3 provides for a two point enhancement "[i]f the defendant abused a position of public or

---

[16] The undersigned notes that Mr. James. B. Lee represented Movant on appeal and at re-sentencing. (Criminal Action No. 5:04-0088, Document No. 114.)

private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The trial testimony revealed that Movant held himself out as Mr. Mapel's paralegal. (Criminal Action No. 5:04-0088, Document No. 146, p. 91.) Mr. Smyth and Mr. Buzzo explained that Movant attended meetings with Mr. Mapel, which concerned Mr. Buzzo's criminal case. (Id., Document No. 145, p. 126; Id., Document No. 146, pp. 91 - 93.) Specifically, Mr. Buzzo testified that Mr. Mapel "said he had Mark Reynolds that was his paralegal and wanted to know if it was okay if he used him, and I said I didn't care. I didn't mind. He wanted to know if it was all right if he brought him to the meeting, and I said it was all right with me." (Id., Document No. 146, p. 91.) Mr. Buzzo stated that Movant assisted Mr. Mapel in negotiating the legal fee and in preforming legal work involving Mr. Buzzo's case. (Id., p. 92.) The trial testimony exhibited that Movant then represented to Mr. Buzzo that his "plea would be jerked" if Mr. Buzzo failed to pay the bribe. (Id., pp. 114 - 15.) The Fourth Circuit has recognized that a paralegal holds a position of trust. See United States v. Smith, 282 Fed.Appx. 270 (4th Cir. 2008)(finding that defendant, who was employed as a paralegal, held a position of trust which facilitated her commission of the crime conspiracy to commit wire fraud, as required under Sentencing Guidelines to adjust her sentence for abuse of a position of trust). Based on the foregoing, the undersigned finds that Movant clearly held a position of trust by acting as a paralegal on Mr. Buzzo's legal team. Further, the evidence supports a finding that Movant used this position of trust to facilitate the commission of wire fraud and obstruction of justice. Accordingly, appellate counsel was not ineffective in failing to challenge the application of Guidelines Section 3B1.3.

Next, the Court finds that appellate counsel did not act unreasonably in failing to object to the application of Guideline Section 2J1.2(b)(2). Section 2J1.2(b)(2) provides for a three level

increase "[i]f the offense resulted in substantial interference with the administration of justice."
U.S.S.G. § 2J1.2(b)(2). The Fourth Circuit has recognized that notwithstanding the fact that a
defendant is "convicted of obstruction of justice, [his] resulting sentence may validly be enhanced
for 'substantial interference with the administration of justice.'" United States v. Hartz, 64 F.3d 660
(4th Cir. 1995), cert. denied, 516 U.S. 1063, 116 S.Ct. 744, 133 L.Ed.2d 692 (1996)(unpublished),
citing United States v. Dudley, 941 F.2d 260, 264 (4th Cir. 1991). Based on a thorough review of the
record, the undersigned finds that appellate counsel did not act unreasonably in failing to challenge
the application of Section 2J1.2(b)(2). During the underlying criminal trial, AUSA Morgan and
Judge Chambers presented testimony regarding the disruptive effective that Movant's actions had
on Mr. Buzzo's criminal case and the entire judicial process. Mr. Buzzo's guilty plea had to be set
aside, new defense counsel had to be appointed, a new AUSA had to be assigned to the case, and
the court proceedings had to restart from the beginning. Additionally, Movant's actions caused the
entire judicial process to come under scrutiny. Movant and Mr. Mapel's scheme put on the
appearance that a defendant could buy a favorable sentence. This scheme wrongly brought Judge
Chambers and AUSA Morgan's integrity into question. Based on the foregoing, the undersigned
finds that the record supported a finding of "substantial interference with the administration of
justice." Therefore, appellate counsel was not ineffective in failing to challenge the application of
Section 2J1.2(b)(2). The Court further notes that appellate counsel successfully argued that it was
inappropriate to implement an upward departure for "a significant disruption of governmental
function" under Section 5K2.7.[17] (Criminal Action No. 5:04-0088, Document No. 186, pp. 5 - 13.)

---

[17]   Section 5K2.7 provides that the Court may depart from the Guidelines if there was a
significant disruption of governmental function. Specifically, Section 5K2.7 states as follows:

Finally, Movant claims that appellate counsel was ineffective in failing to seek the application of Guideline Section 3E1.1(a). Section 3E1.1(a) provides that a defendant's offense level should be decreased by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The Commentary to Section 3E.1 provides that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." U.S.S.G. § 3E1.1(a), Commentary No. 2. A conviction by trial "does not automatically preclude a defendant from consideration for such a reduction," but it is a rare situation where a defendant can demonstrate acceptance of responsibility after proceeding to trial. Id. An example of an instant where acceptance of responsibility is appropriate following a trial, is "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." Id. Although Movant confessed to involvement in the scheme, Movant clearly put the government to its burden of proof as to essential factual elements of guilt at trial. In closing arguments, trial counsel challenged the credibility of the government's witnesses and disputed that the government had proved the elements of the offenses beyond a reasonable doubt.[18] (Criminal Action No. 5:04-0088, Document No. 148, pp. 39 - 49.) Trial

---

> If the defendant's conduct resulted in a significant disruption of governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

The District Court determined that "the evidence here falls short of . . . establishing the unusual circumstances to the degree that must be present in order to justify a departure." (Criminal Action No. 5:04-0088, Document No. 186, p. 13.)

[18] Specifically, counsel argued that Movant is "not guilty of these crimes, because they have not proven anything beyond a reasonable doubt." (Criminal Action No. 5:04-0088, Document No.

counsel further argued that Movant's confession was weak evidence. Specifically, trial counsel argued as follows: "Now, confessions. A confession. 'I was going to rip off old Jack.' Well, you know, we are not trying to hide that. It's not right, but he is not charged with larceny. He is charged with wire fraud. What's ripping off Jack got to do with anything, other than to show that he didn't have an honest intention at that time?" (Id., p. 47.) Based upon the foregoing, the undersigned finds that Movant put the government to its burden of proof at trial by denying the essential factual elements of guilt. See United States v. Garcia, 233 Fed.Appx. 311 (4th Cir. 2007)(finding that defendant was not entitled to a reduction for acceptance of responsibility because he put the Government to its burden of proof at trial"). Appellate counsel, therefore, was not ineffective in failing to seek a downward adjustment for acceptance of responsibility.[19]

**6.     Movant's claim that trial counsel failed to present the defense of public authority and entrapment by estoppel.**

Movant alleges that "counsel was ineffective for failing to file a Notice of Intent to present the defense of Public Authority and Entrapment by Estoppel." (Civil Action No. 5:07-0271,

---

148, pp. 41 - 42.)

[19]   To the extent Movant asserts that the District Court improperly applied the Sentencing Guidelines, his claim is without merit. Claims of errors under the Sentencing Guidelines are generally not cognizable under Section 2255. The Fourth Circuit has explained as follows:

> [B]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. Section 2255 provides relief for cases in which 'the sentence was in excess of the maximum authorized by law.' Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines.

United States v. Pregent, 190 F.3d 279, 283 - 84 (4th Cir. 1999). Movant's sentence in the instant case did not exceed the statutory maximum authorized by his conviction (20 years as to wire fraud and 10 years as to obstruction of justice). The undersigned notes that Movant was sentenced to 96 months as to each count to run concurrently. Therefore, the undersigned finds that Movant's claim that the District Court improperly applied the Sentencing Guidelines to be without merit.

Document No. 203, pp. 27 - 33.) Movant states that "counsel was provided evidence that, at all times relevant, during the investigation and prosecution of this matter, Movant was a confidential informant ("CI") for the Federal Bureau of Investigations, Clarksburg Division, Clarksburg, West Virginia." (Id., pp. 27 - 28.) Movant alleges that "[s]ince the early 1980's Movant has, on and off, been a confidential information for various State and Federal agencies." (Id., p. 28.) Movant states that in 2002 he became a CI for the FBI in Clarksburg, West Virginia, and he began providing information on the activities of Carl Mapel, Members of the West Virginia Republican Party, the United States Attorney for the Southern District of West Virginia, and Kasey Warner. (Id., p. 29.) Movant claims that "his case agent had actual authority from the United States District Court and the United States Attorney to engage him in covert activity as a CI and that Movant legitimately relied on the agent's real authority to authorize Movant's conduct." (Id., p. 31.) Finally, Movant asserts that "the government's past mode of operating with him, and Movant's belief that his covert conduct would later be ratified and accepted by State and Federal authorities are all relevant factors to the presentation of the entrapment by estoppel defense that should have been presented by counsel. (Id., p. 33.)

In response, Respondent argues that Movant was not a government agent. (Id., Document No. 217, pp. 24 - 25.) Respondent states that Movant was not acting as confidential informant or cooperating witness for the FBI a the time of his arrest. (Id., p. 25.) Respondent disputes Movant's claim that he was authorized to conduct his own investigation for the FBI and commit crimes in doing so. (Id.) In support of his argument, Respondent attaches the affidavit of FBI Supervisory Senior Resident Agent Frankland Gorham of the Clarksburg, West Virginia Resident Agency. (Id., Document No. 217-3.)

37

In his Reply, Movant continues to claim that he was a confidential informant for the FBI. (Id., Document No. 222, pp. 20 - 22.) Movant states that he had the approval of the FBI and the government to "work as a confidential information for the FBI." (Id., p. 21.) Movant alleges that "before and during his arrest on the current offense he provided information on individuals that were the focus of the Joint Terrorism Task Force (J.T.T.F.). This cooperation resulted in movant being granted a letter of immunity." (Id.) Finally, Movant states that throughout his incarceration "movant has maintained a cooperative relationship with Special Agent Michael Kocher but the Trial Lawyers refused to seek an affidavit from Agent Kocher to confirm movant's position." (Id., p. 22.)

The undersigned finds that trial counsel was not ineffective in failing to present the public authority and entrapment by estoppel defense. Movant basis his argument upon the allegation that he was acting as a confidential informant for the FIB. According to the Declaration of Agent Frankland Gorham, Movant was not acting as a cooperating witness or confidential informant with the FIB at the time of Movant's arrest on March 25, 2004. (Civil Action No. 5:07-0271, Document No. 217-3, p. 3.) Agent Gorham declares that "[t]he FBI has never at any time authorized any investigation by Reynolds of alleged corruption in connection with a criminal case involving Bill Buzzo in the Southern District of West Virginia." (Id.) Agent Gorham states that he "reviewed the confidential source files related to Reynolds and determined that Reynolds was a confidential informant from April 1994 to June 1994 and was a cooperating witness from September 1997 to January 1999." (Id., p. 2.) Agent Gorham declares that even though Movant contacted the FBI on several occasions offering to provide information about criminal activities, "at no point prior to his arrest in the Southern District of West Virginia on March 25, 2004, did Reynolds ever provide or attempt to provide the FBI with any information about alleged corruption in connection with a

criminal case involving Bill Buzzo in the Southern District of West Virginia or elsewhere." (Id., p. 3.) Finally, Agent Gorham verifies that "the FBI never, at any time, authorized Reynolds to conduct his own, independent investigations on behalf of the government, and further was specifically advised not to conduct such action." (Id.) Moreover, even though Movant asserts that he was providing information on the activities of Carl Mapel, Members of the West Virginia Republican Party, the United States Attorney for the Southern District of West Virginia, and Kasey Warner, Movant confessed that he knew that no official corruption had occurred. (Criminal Action No. 5:04-0088, Document No. 147, p. 101.) Accordingly, the undersigned finds that trial counsel acted effectively in failing to present the public authority and entrapment by estoppel defense.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document Nos. 201 - 203.) and **REMOVE** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant and to counsel of record.

Date: May 21, 2010.

R. Clarke VanDervort
United States Magistrate Judge