```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                              AT BECKLEY
```

MARK ANTHONY REYNOLDS,

    Plaintiff,

v.                                     CIVIL ACTION NO. 5:07-0271
                                          (Criminal No. 5:04-0088-2)

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff's motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. By Standing Order, the action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of findings of fact and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge VanDervort submitted his Findings and Recommendation to the court on May 21, 2010, in which he recommended that the court deny plaintiff's motion under 28 U.S.C. § 2255, and remove the matter from the court's docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file any objections to Magistrate Judge VanDervort's Findings and Recommendations. By Order entered June 11, 2010, the court granted plaintiff's motion for additional time and plaintiff was given additional time to file his objections.

Both plaintiff and the United States filed objections to the Magistrate Judge's Findings and Recommendation. With respect to those objections, the court has conducted a <u>de novo</u> review.

## I.  Factual and Procedural Background

Reynolds was charged in a four-Count Superseding Indictment, filed on July 16, 2004. In Counts One, Two, and Three, he was charged with wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2. In Count Four, Reynolds was charged with obstruction of justice and aiding and abetting obstruction of justice, in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2.

On August 3, 2004, following a four-day jury trial, Reynolds was found guilty of Counts Two and Four of the Superseding Indictment. On August 9, 2004, he filed a motion for new trial and judgment of acquittal. By Order entered August 20, 2004, the court granted Reynolds's motion for judgment of acquittal as to the sixth sentencing factor found by the jury and denied the motion in all other respects.

On January 6, 2005, the court sentenced Reynolds to a 120-month term of incarceration on Count Two and a 96-month term of incarceration on Count Four, to run concurrently. The court also imposed a 3-year term of supervised release, a $200 special assessment, and ordered Reynolds to pay $32,000 in restitution. On appeal, the Fourth Circuit affirmed Reynolds' convictions,

vacated his sentence based upon an incorrect application of the United States Sentencing Guidelines, and remanded the matter for resentencing. United States v. Reynolds, 2006 WL 1194314 (4th Cir. 2006). At resentencing, the court sentenced Reynolds to a 96-month term of incarceration as to Counts Two and Four, to run concurrently. On August 31, 2006, Reynolds filed his Notice of Appeal but, by Order entered on March 9, 2007, the Fourth Circuit dismissed the appeal at Reynolds' request.

On June 8, 2007, Reynolds filed the instant motion under 28 U.S.C. § 2255 along with an Affidavit and Memorandum in Support. As grounds for habeas relief, Reynolds alleges that counsel was ineffective based upon the following: (1) trial counsel "denied Reynolds his constitutional right to testify in his own behalf;" (2) counsel failed to adequately research the law concerning the suppression of illegally intercepted recordings and present an adequate defense on Reynolds's behalf; (3) counsel failed to challenge federal jurisdiction concerning the charge of wire fraud; (4) counsel failed to "investigate and present evidence relevant to the obstruction of justice offense;" (5) appellate counsel failed to "investigate, argue and object to the sentencing enhancements that Reynolds received;" and (6) trial counsel failed to "present the defense of public authority and entrapment by estoppel."

## II. Analysis

All of Reynolds' claims allege ineffective assistance of counsel. The standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Under Strickland, a plaintiff must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91. Counsel's performance is entitled to a presumption of reasonableness. Id. Thus, a habeas plaintiff challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. at 689. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

**1.     *Objection No. 1:  Denial of Right to Testify***

According to Reynolds:

> Plaintiff further states that his right to testify and present evidence of his acting in a covert capacity for the F.B.I. denied him a fair trial and caused a complete misscarriage [sic] of justice. [F]urthermore plaintiff's testimony far outweighed any prejudice that he would have suffered by cross examination because the testimony would not only [have] proven that plaintiff lacked the Mens Rea required for the crime but that plaintiff was actually innocent of the offense.

Objections at 1.

The Strickland standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify. Palmer v. Hendricks, 592 F.3d 386, 394 (3d Cir. 2010); Matylinsky v. Budge, 577 F.3d 1083, 1097 (9th Cir. 2009).  Under the second prong of Strickland, a petitioner must show that the errors were "sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  Furthermore, a court may address the two prongs in any order and a failure to establish one prong obviates a need to address the other.  Id. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient

showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.").

Reynolds filed an affidavit, not sworn to under penalty of perjury, that stated the following:

> (a) Counsel denied me the right to testify in my own behalf at trial. It was agreed, between counsel and myself, that it would be essential to my defense, that I testify and explain to the jury all of the circumstances that led to my arrest. Counsel denied me the right to present an adequate defense. . . . Throughout my entire case I stressed the importance of my testifying in my own behalf and the need for the proper Motions to be filed to assure that this evidence could be presented. . . . I continued to stress that if I testify and the evidence is presented I would have a greater chance of being found not guilty.

Affidavit of Mark Reynolds dated June 4, 2007.

The government submitted a declaration, pursuant to 28 U.S.C. § 1746, from Reynolds' trial counsel, J. Steven Hunter, in which Hunter declared under penalty of perjury that he specifically informed Reynolds of his constitutional right to

testify in his defense and that the decision to testify ultimately rested with Reynolds. Hunter Declaration ¶ 2. Hunter went on to declare that, although he informed Reynolds the decision regarding whether to testify was for Reynolds to make, he advised Reynolds not to testify in his own behalf given Reynolds' extensive criminal history. Id. ¶ 3. Hunter thought that it would have been harmful for the prosecution to be able to cross examine Reynolds on his prior convictions. Id. Hunter stated that Reynolds understood he had the right to testify and that he knowingly and intelligently waived that right. Id. at ¶ 4.

In this case, even assuming Reynolds could show that Hunter did not advise him of his right to testify,[1] his claim would still fail because he has not made an adequate showing of prejudice. There is no presumption of prejudice where a defendant fails to be properly advised that he had a right to testify at his own trial. Palmer v. Hendricks, 592 F.3d 386, 396-99 (3d Cir. 2010); Barrow v. Uchtman, 398 F.3d 597, 608 n.12 (7th Cir. 2005).

Reynolds minimizes the fact that had he taken the stand he would have been impeached with his prior convictions which would have no doubt undermined his credibility. Reynolds had a

---

[1] In his PF&R, Magistrate Judge VanDervort found that Hunter did advise Reynolds of his right to testify. Proposed Findings & Recommendation at 12.

significant criminal history as evidenced by the fact that he was sentenced as a Criminal History Category VI.  "It is not reasonably likely that [Reynolds'] testimony, given his diminished credibility as a convicted felon, would have swayed the jury's verdict in any way."  Alexander v. United States, 2007 WL 737361, *3 (7th Cir. 2007); see also Henry v. United States, 2008 WL 5122202, *6 (C.D. Ill. 2008) ("Henry ignores the reality that, had he taken the stand, he would have been impeached with his prior drug convictions, which would have weighed against his credibility.").

Furthermore, the evidence in this case was strong[2] and Reynolds has not shown how his testimony would have affected the outcome of the trial.  Although he contends that he would have taken the stand to testify that he was acting in a covert capacity for the FBI, the government would have been able to present evidence directly refuting Reynolds' contention.  The affidavit of FBI Supervisory Senior Resident Agent Franklin Gorham states that, contrary to Reynolds' assertions, Reynolds was not working as a confidential informant or cooperating witness for the FBI at the time of his arrest in this case.  Gorham Aff. ¶¶ 5-7.  According to Gorham, Reynolds' involvement with the FBI was years prior to the events in this case.  Id.

---

[2] See Answer of United States at 1-10 for a detailed recitation of the evidence presented at trial.

Given the fact that Reynolds' credibility would have been seriously undermined as a convicted felon, it is doubtful that the jury would have believed him over Agent Gorham.  See United States v. Brown, 2010 WL 2408172, *4 (M.D. Pa. 2010) ("Even though Petitioner claims he wanted to testify on his own behalf, Petitioner has not presented any evidence that his testimony would have undermined the jury's guilty verdict.  As a result, Petitioner's claim for ineffective assistance of counsel must fail under the second prong of Strickland because Petitioner cannot establish a reasonable probability that, had he testified, the result of the proceeding would have been different.") (internal quotations omitted).

Based on the foregoing, Reynolds' conclusory statements that his testimony would have changed the jury's verdict are without merit and his objection is OVERRULED.

## 2.      *Objection No. 2:  Alleged Title III Violation*

Prior to trial, Reynolds' counsel filed a motion to suppress on behalf of Reynolds seeking to exclude "all tape recorded phone conversations which were recorded without a legal wire tap Order or which there is no written evidence of consent to record both as to this defendant and as to Jack Maple, William Buzzo and as to all recorded conversations as disclosed in the government's discovery" and "all evidence obtained as a result of any illegal wiretaps or other interception of phone conversations

with this defendant or with Jack Maple a codefendant in this matter."

A review of the record reveals that Mr. Hunter argued the recordings should be suppressed based upon constitutional and statutory grounds. Although Hunter was ultimately unsuccessful, it is clear that he argued that the recordings were illegal and violated Title III. He continued to unsuccessfully challenge the admissibility of the tapes during the jury trial and he requested a mistrial arguing lack of consent regarding the recordings. Accordingly, the court finds that Reynolds' counsel made an appropriate, albeit unsuccessful, argument regarding exclusion of the recordings. Further, the decision of whether and how to object to evidence is a question of strategy for trial counsel. An attorney's strategic decision is presumed reasonable and protected from second guessing under Strickland.

In addition, there is no evidence that Reynolds was prejudiced by counsel's failure to continue pressing a losing argument. When viewed in its entirety, the record is clear that Mr. Buzzo knew that phone calls in question were being recorded. Buzzo's consent rendered those recordings lawful under both Title III[3] and the Fourth Amendment. See 18 U.S.C. § 2511(2)(c);

---

[3] 18 U.S.C. § 2511(2)(d) provides that "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such

United States v. Friedman, 300 F.3d 111, 122-23 (2d Cir.2002). A party to a conversation consents when he is aware that the conversation will be recorded and he continues to use that means of communication. See United States v. Hammond, 286 F.3d 189, 192 (4th Cir. 2002); United States v. Workman, 80 F.3d 688, 693-94 (2d Cir. 1996). "Moreover, the recording of a conversation is not `non-consensual' just because not every party to the conversation has agreed to it. The language of section 2511(2)(d) unambiguously states that it shall not be unlawful for a person to intercept a communication where `such person is a party to the conversation' or where `one of the parties' has consented to the recording." Russell v. Am. Broad. Co., Inc., 1995 WL 330920, *2 (N.D. Ill. 1995) (emphasis in original).

    Finally, the court rejects plaintiff's claim that the recordings were made in the furtherance of a crime or tort. Title 18 U.S.C. § 2511(2)(d) provides as follows:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

---

interception. . . ."

There is simply no evidence that Mr. Buzzo recorded the conversations for a criminal or tortious purpose. As Magistrate Judge VanDervort summarized:

> A review of the record reveals that Mr. Buzzo knew, but was indifferent, as to the fact that the calls were being recorded. Mr. Buzzo testified that he subsequently became concerned over the threatening nature of the calls and wanted all calls to be recorded. Mr. Buzzo never stated that he recorded the calls a "receipt" for the bribes. At most, it appears that Mr. Buzzo may have been gathering evidence of a violation of the law, which is not criminal or tortious. See United States v. Zarnes, 33 F.3d 1454, 1469 (7th Cir. 1994)(finding that defendant "made the tape for the lawful purpose 'of turning [it] over to the Government if she were caught in the hope of obtaining a better deal for herself'").

Proposed Findings and Recommendation at 23.

For the reasons explained above, plaintiff's objection is OVERRULED.

### 3. *Objection No. 3: Manufactured Jurisdiction Argument.*

Reynolds contends that Hunter was ineffective for failing to investigate and present evidence that showed that the phone call of February 18, 2004, that formed the basis for the wire fraud count, was the result of manufactured jurisdiction. Contrary to plaintiff's assertion, there was no evidence of manufactured jurisdiction for Reynolds' counsel to investigate. FBI Agent Dean Lauffer testified that the government was not involved in the recording of calls before March 13, 2004.

Plaintiff has offered no evidence to show otherwise and, accordingly, his objection is OVERRULED.

### 4.     *Objection No. 4:  Obstruction of Justice.*

Reynolds contends that there was insufficient evidence to support his conviction for obstruction of justice because discovery would show that "Mapel advised the court of his status and was permitted to proceed despite it." Objections at 2.  This argument is frivolous and without merit.

The court agrees with the government that this is actually a challenge to the sufficiency of the evidence used to convict him on the obstruction count.  "In the absence of circumstances indicating that a conviction is so devoid of evidentiary support as to raise a due process issue, the sufficiency of the evidence is not cognizable in a § 2255 attack." Chandler v. United States, 332 F. Supp. 397, 402 (D. Md. 1971).  For this reason,

> The Fourth Circuit has cautioned against reviewing routine claims challenging the sufficiency of the evidence in § 2255 proceedings, stating that "[p]risoners adjudged guilty of crime should understand that 28 U.S.C. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty." (quoting Taylor v. United States, 177 F.2d 194 (4th Cir. 1949) (per curiam)); Sonnier v. United States, 314 F.2d 69, 71 (4th Cir. 1963) (noting that attack on the sufficiency of the evidence typically is not cognizable under § 2255); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)(same).  To put it another way, "[s]ection 2255 does not exist to correct erroneous factual determinations or to challenge

> the sufficiency of the evidence or to correct errors which should have been brought to the attention of the trial court or the appellate court on direct appeal." Neeley v. United States, 405 F.Supp. 1186, 1189 (W.D.Va.1975), citing Sunal v. Large, 332 U.S. 174 (1947).

Phifer v. United States, 2008 WL 4279700, *8 (W.D.N.C. 2008).

In any case, even assuming that this claim is cognizable, it is still without merit. According to the former Local Rule of General Procedure 2.02 of this court, which was the operative rule governing the admission of visiting attorneys in 2004, "[a]ny person who has not been admitted to practice before the Supreme Court of Appeals of West Virginia, but who is a member of good standing of the bar of the Supreme Court of the United States, the bar of the highest court of any other state in the United States, or the bar of the District of Columbia, shall be permitted to appear as a visiting attorney in a particular case in association with a permanent member of the bar of this court as herein provided. The visiting attorney shall file with the clerk, at or before his or her initial appearance, a statement identifying by name and address the bar of which he or she is a member in good standing and designating some permanent member of the bar of this court who has an office for the practice of law in this district upon whom pleadings, notices and other papers may be served." Thus, contrary to plaintiff's assertions, Mapel did misrepresent his status to this court when he moved for admission as a visiting attorney because, in doing so, he

represented to the court that he was a member in good standing of the Pennsylvania State Bar.  This was not true.

Although Reynolds claims that he was not guilty of obstruction of justice because Judge Chambers knew of Mapel's inactive status and allowed Mapel to proceed as counsel, that claim is clearly refuted by the record.  Judge Chambers testified that had he known of Mapel's inactive status, he would not have permitted him to act as counsel.  The jury clearly had sufficient evidence to support its finding that Reynolds obstructed justice. Based on the foregoing, Reynolds has failed to show that there is a reasonable probability that, but for Hunter's alleged errors, the results of the proceeding would have been different and his objection is OVERRULED.

5.      *Objection No. 5:  Failure to Challenge Application of Sentencing Guidelines.*

Reynolds claims that counsel was ineffective for failure to object to certain sentencing enhancements he received and his failure to receive a two-level downward adjustment for acceptance of responsibility.  For the reasons given by Magistrate Judge VanDervort, see Proposed Findings and Recommendation at 32-36, the court finds that the sentencing guidelines were properly applied and counsel's failure to object thereto was not deficient.  Accordingly, any objection thereto is OVERRULED.

6.     *Objection No. 6:  Failure to Present Defense of Public Authority and Entrapment by Estoppel*

As noted above, Reynolds wanted to argue that, at the time of the events underlying his conviction, he was working as a cooperating informant with the FBI.  As discussed earlier, this contention was squarely refuted by the FBI.  Accordingly, any failure on the part of Reynolds' counsel to pursue this line of defense did not amount to ineffective assistance under the deferential Strickland standard because Reynolds cannot show how the outcome of his trial would have been different.

### III. Conclusion

For the foregoing reasons, the court adopts the Findings and Recommendations of Magistrate Judge VanDervort, **DENIES** plaintiff's motion under 28 U.S.C. § 2255, and directs the Clerk to remove the matter from the court's docket.

Additionally, the court has considered whether to grant a certificate of appealability.  See 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v.

McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court DENIES a certificate of appealability.

     The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record and to plaintiff, pro se.

     IT IS SO ORDERED this 29th day of September, 2010.

                        ENTER:

                        David A. Faber
                        Senior United States District Judge